IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ETORIA DOUGLAS**,

          *Plaintiff*,

*v.*

**ONIN STAFFING**, **LLC**, **TOPRE AMERICA CORPORATION**, **and NISSAN NORTH AMERICA, INC.**,

          *Defendants*.

CAUSE NO. 3:24-CV-157-CWR-ASH

**ORDER**

Before the Court are motions to dismiss filed by defendants Nissan North America, Inc.; Topre America Corporation; and Onin Staffing, LLC. Docket Nos. 8, 12, and 22. For the reasons that follow, Nissan's motion will be granted, and Topre and Onin's motions will be granted in part and denied in part.

**I.  Factual and Procedural History**

Plaintiff Etoria Douglas was hired by Onin in February 2022 "and was assigned to work at the Nissan complex on a temp-to-perm basis for one of Nissan's vendors, Topre." Docket No. 1 ¶ 24.

Douglas claims that one day, as she was being dropped off at work, Nathan Dubose, a Topre employee, addressed her sexually by saying "damn girl." Docket No. 1-1 at 2. Douglas maintains that although she told Dubose she was not interested in him, he continued to harass her throughout the day. Dubose waited for Douglass outside the bathroom on a

forklift and tried to get her in trouble at work by falsely reporting that her boyfriend pulled a gun on him.

Douglas alleges that after she "reported the harassment . . . Human Resources at Topre began looking for excuses to fire [her]." Docket No. 1 ¶ 28. She says Jackie, a Topre HR employee, "began assuming [she] was medically unable to work" and required her to miss work on two occasions. *Id.* ¶ 29. On the first occasion, Jackie sent Douglas "for a COVID test because she saw her sneeze." *Id.* The second occasion occurred after Douglas had "suffered a minor knee sprain." *Id.* ¶ 30. Jackie observed Douglas walking differently and asked her if she had been medically evaluated. Douglas told Jackie that she had been treated by a doctor and was released to work. She claims that Jackie insisted she provide a work release that included "the words 'no restrictions' on it — despite the fact [Douglas's initial work release] listed no restrictions." *Id.* ¶ 31. Jackie then sent Douglas home and required her to get another evaluation before she could return to work.

Topre terminated Douglas in June 2022 because she "had too many attendance points in the system." *Id.* ¶ 32. Douglas, however, believes she was terminated because she reported Dubose's conduct. She contends that her employment with Onin Staffing was also terminated when Onin failed to reassign her after she was dismissed from Topre, "despite the existence of other available work." *Id.* ¶ 33.

Douglas subsequently filed suit against Nissan, Topre, and Onin asserting claims under the ADA (discrimination) and Title VII (sex discrimination, hostile work environment, and retaliation). Each defendant responded with a motion to dismiss. Their arguments are addressed below.

2

**II.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The complaint need not contain "detailed factual allegations," but requires more than "[t]hreadbare recitals of the elements of a cause of action." *Id.* A plaintiff must plead enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court accepts the factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).

**III.    Discussion**

   **A.     Nissan**

Nissan argues that Douglas has not plausibly alleged that it was her employer under the ADA or Title VII.

To determine whether Nissan was Douglas's employer, the Court must consider whether Nissan had the right to hire, fire, supervise, or set Douglas's work schedule. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). The Court also considers whether Nissan paid Douglas's "salary, withheld taxes, provided benefits, and set the terms and conditions of [her] employment." *Id.* (quotation marks omitted).

The Court has considered these factors and finds that Douglas has not plausibly alleged that Nissan was her employer. Douglas states, in a conclusory manner, that her "work was directed by Nissan and/or Topre" and that "Nissan and Topre both had control over who was present at work and the duties assigned." Docket No. 1 at ¶ 25. But Douglas does

3

not allege facts to support her claims. *See Williams v. Delta Zeta Sorority*, No. CV 23-268-JWD-RLB, 2024 WL 1315863, at *7 (M.D. La. Mar. 26, 2024). To the contrary, she maintains that Onin "screened potential employees, . . . handled administrative tasks related to hiring and paying employees," and "had the power to prevent or end discrimination and harassment by . . . assigning her other work." *Id.* Additionally, she does not allege that Dubose and Jackie were employed by Nissan; according to Douglas, they were "employee[s] of Topre." *Id.* ¶¶ 26, 29. Accordingly, the Court will dismiss the claims against Nissan.

    **B.**    **Topre and Onin**

        1.    <u>ADA Discrimination</u>

Defendants first argue that Douglas fails to plausibly allege that she was terminated because she was "regarded as" disabled.

"The ADA provides protections for individuals who have a disability, had a disability, or are regarded as having a disability." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). A person is "regarded as" disabled when they are perceived as having a physical or mental impairment, regardless of "whether the impairment actually limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The ADA's "regarded as" status does "not apply to impairments that are transitory and minor." *Id.* § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* "Section 12102 does not define what types of impairments are minor, so courts determine whether an impairment is minor on a case-by-case basis considering factors such as symptoms, severity, the treatment required, the risk involved, and any surgical intervention anticipated or necessary." *Douglas v. Ben E. Keith Co.*, No. 3:19-CV-2824-BN, 2021 WL 3930086, at *5 (N.D. Tex. Sept. 1, 2021) (quotation marks omitted).

Douglas's alleged impairments are "covid and [the] knee injury." Docket No. 21 at 3. Douglas does not allege that she actually had covid, only that Jackie required her to receive a covid test because she sneezed. Nor does she allege that her knee injury lasted or was expected to last for any period of time. Rather, Douglas explains that she was treated by a doctor and released to work with no restrictions.

Thus, the Court concludes that both of Douglas's impairments were "objectively transitory and minor by her own admission, because the actual or expected duration of [her] impairment[s] . . . was [either] less than six months," or lasted for no time at all. *Lyons*, 964 F.3d at 303; *see Douglas*, 2021 WL 3930086, at *5. Douglas does not allege any facts to the contrary. *See Worrall v. River Shack LLC*, No. 3:22-CV-0392-B, 2022 WL 3371345, at *5 (N.D. Tex. Aug. 15, 2022) (explaining that "an allegation of a transitory illness is not necessarily fatal to [a plaintiff's] regarded-as disability claim if [they] can show that [their] transitory illness was non-minor."). Accordingly, Douglas has not plausibly alleged that Topre or Onin discriminated against her under the ADA.

    2.    <u>Sex Discrimination</u>

Next, defendants argue, among other things, that dismissal is warranted on Douglas's sex discrimination claim because she does not plead "any claim of differential or discriminatory treatment." Docket No. 13 at 4.

To establish a prima facie case of sex discrimination, a "plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quotation marks omitted).

Douglas maintains that she was fired "because she is a woman and refused to submit to Dubose's attentions." Docket No. 21 at 8. This allegation, however, is insufficient to state a plausible claim of sex discrimination. Though Douglas need not identify a comparator at the pleadings stage, *see Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767–68 (5th Cir. 2019), she must plausibly allege that she (1) "suffered an adverse employment action (2) because of [her] protected status." *Keplar v. Google, LLC*, No. 3:22-CV-2281-B, 2023 WL 7360891, at *3 (N.D. Tex. Nov. 7, 2023) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). She has not alleged facts for the Court to draw a reasonable inference that anyone outside of her sex was treated more favorably or that she was discriminated against because she is a woman. *See Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (finding that "the complaint [did] not plead any facts that would permit a reasonable inference that T-Mobile terminated Olivarez because of gender identity."). Accordingly, Douglas's sex discrimination claims are dismissed.

      3.    <u>Hostile Work Environment</u>

Defendants then argue that Douglas has not alleged a hostile work environment claim. To state a claim of hostile work environment, Douglas must allege that: (1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take remedial action. *See Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022). Defendants mainly argue that Douglas cannot overcome the fourth element because she fails to sufficiently allege "severe or pervasive" harassment. Docket No. 13 at 6; Docket No. 23 at 12.

Courts evaluate whether an environment is hostile by analyzing the totality of circumstances, "focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (citation omitted). "An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment while frequent incidents of harassment, though not severe, can reach the level of pervasive." *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) (cleaned up).

Douglas claims that as she was being dropped off at work, Dubose addressed her sexually by saying "damn girl." Docket No. 1-1 at 2. Although she told Dubose she was not interested in him, he continued to harass her throughout the day. Dubose waited for Douglass outside the bathroom on a forklift and tried to get her in trouble at work by falsely reporting that her boyfriend pulled a gun on him.

Considering these facts together and viewing them in the light most favorable to Douglas, the Court is not convinced that Douglas has plausibly plead a reasonable inference to support the elements of her claim. A single day of unwelcome behavior, without any allegations as to how Dubose's actions interfered with Douglas's work performance, is insufficient to support her hostile work environment claims.[1] Therefore, these claims are dismissed.

---

[1] Douglas asks the Court to consider her interactions with Jackie even though they occurred outside the filing period for her hostile work environment claim. Docket No. 21 at 9. "Under the 'continuing violation' theory, acts outside the statutory filing period may still be actionable as part of a hostile work environment claim if they are sufficiently related to acts occurring within the filing period." *Lopez v. AT&T Mobility Servs. LLC*, No. EP-24-CV-180-KC, 2025 WL 600120, at *12 (W.D. Tex. Feb. 25, 2025). In evaluating whether acts are sufficiently related, courts consider whether the acts involved the same type of harassment from the same offender. *See Noack v. YMCA of Greater Hous. Area*, 418 F. App'x 347, 351 (5th Cir. 2011) (citing *Stewart*

7

      4.      <u>Retaliation</u>

The Court now turns to Douglas's retaliation claim. To state a claim of retaliation under Title VII, Douglas must allege that: (1) she engaged in a protected activity, (2) she was subjected to a materially adverse action, and (3) there is a causal connection between the protected activity and materially adverse action. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

Douglas explains that after she reported Dubose's conduct, Jackie "began looking for excuses to fire [her]." Docket No. 1 ¶ 28. She maintains that Jackie required her to miss work on two occasions and that Topre ultimately terminated her in June because she "had too many attendance points in the system." *Id.* ¶ 32.

The Court finds that Douglas has alleged a plausible retaliation claim. She engaged in a protected activity when she reported Dubose's sexual harassment and was subject to a materially adverse action when she was terminated. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276–77 (2009); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Additionally, she has alleged a causal connection between her report and the materially adverse action. *See Feist v. La., Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) (explaining that "a time lapse of up to four months may be sufficiently close" to support an inference of causation). Accordingly, the motions to dismiss Douglas's retaliation claim are denied.[2]

---

*v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009)). Here, "[t]he alleged acts did not involve the same type of harassment and were not perpetrated by the same individuals." *Id.* Therefore, the Court will not consider them in evaluating Douglas's hostile work environment claim.

[2] Onin separately argues that Douglas "cannot demonstrate she engaged in protected activity that caused Onin to terminate her" because she did "not allege that she ever complained to Onin or any of its employees regarding her interaction with Dubose or any other alleged unlawful employment action." Docket No. 23 at 14. At this stage the Court finds that Douglas has alleged enough facts to overcome the motion to dismiss.

**IV.     Conclusion**

Nissan's motion to dismiss is granted. Topre and Onin's motions to dismiss are granted in part and denied in part. Within seven days, the parties shall contact the chambers of the Magistrate Judge to schedule a Telephonic Case Management Conference.[3]

**SO ORDERED**, this the 31st day of March, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

She explains that "despite the existence of other available work," Onin failed to reassign her after she was dismissed from Topre. Docket No. 1 ¶ 33. She claims that "Onin was in a position, after the dust cleared, to find out from Douglas what really happened at Topre, and take steps to place her somewhere else. Instead, Douglas had no hearing whatever with Onin, which simply ratified Topre's decision with no fuss and itself fired Douglas." Docket No. 30 at 7.

[3] In her response to Topre's motion to dismiss, Douglas requests leave to amend her complaint. Docket No. 21 at 14. She has not, however, filed a proper motion to amend nor has she stated what her amended complaint would say. *See Young v. United States Postal Serv.*, 620 F. App'x 241, 246 (5th Cir. 2015); *see also* L.U.Civ.R. 7(b)(3)(C) and 7(b)(2). Thus, the Court will deny her request.